(January 31, 1893.)

## CASEY v. MILLER.

[32 Pac. 195.]

NOVATION—STATUTE OF FRAUDS.—Where G. owes C. and M. owes
G., C. demands payment of G. G. gives him an order on M.
C. agrees to release G., providing M. accepts order. M. accepts
the order and pays forty-five dollars thereon, and promises to
pay balance at future time. M. is released as G.'s debtor and
becomes the debtor of C. M. thereby accepts C. as his creditor in
place of G.

SAME.—This is a novation. C. has a new debtor in place of G., and
M. a new creditor in place of G.

SAME—STATUTE OF FRAUDS.—M., at request of G., agrees to pay to
C. money that he owes by contract to G. Such contract is not
within the statute of frauds requiring the promise to pay the
debt of another to be in writing. M. simply pays his own debt
to a different person than the one he originally agreed to pay it
to. He is paying his own debt, not the debt of another.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

R. E. McFarland, for Appellant.

The Revised Statutes of Idaho decides this case. Subdivi-
sion third of section 6010 reads as follows: "When the promise,
being for an antecedent obligation of another, is made upon the
consideration that the party receiving it cancels the antecedent
-obligation, accepting the new promise as a substitute therefor;
or upon the consideration that the party receiving it releases
the property of another from levy, or his person from imprison-
ment under an execution on a judgment obtained upon the
antecedent obligation; or upon a consideration beneficial to
the promisor, whether moving from either party to the ante-
cedent obligation or from another person." "The provision of
the statutes of frauds, which requires the promise to pay the
debt of another to be in writing, does not apply to the promise
of A to pay money he owes, by contract with B to C." (Bar-
ringer v. Warden, 12 Cal. 311.) The right of plaintiff to main-
tain this action against defendant is clearly decided in the fol-
lowing cases: Wiggins v. McDonald, 18 Cal. 126; McLaren v.
Hutchinson, 22 Cal. 188, 83 Am. Dec. 59.

Charles L. Heitman, for Respondent.

The appellant's claim in this action is evidenced by a written order given by Charles M. Gates to the appellant; upon this order the respondent made a payment of forty-five dollars, which was indorsed upon the order, and there was no other indorsement thereon. This order was a bill of exchange, payable at sight. Section 3532 of the Revised Statutes of Idaho reads as follows: "An acceptance of a bill must be made in writing by the drawee, or by an acceptor for honor, and may be made by the acceptor writing his name across the face of the bill with or without other words." (*Bassett v. Haines,* 9 Cal. 261.) The evidence in the case at bar shows that there was no novation which would substitute the respondent for Charles M. Gates, and make him liable to appellant for the debt due from Gates to appellant. (*Gyle v. Shoenbar,* 23 Cal. 538.) The mutual assent of all the three parties seems to be necessary to make it an effectual novation or substitution. (1 Parsons on Contracts, 247.) And if the person in whose favor it is drawn has in consideration thereof discharged the debt due to him, and so may hold the order as against the creditor giving it, still this is not a novation. (1 Parsons on Contracts, 248.)

SULLIVAN, J.—This action was brought by the appellant to recover the sum of $275, interest, and costs. The amended complaint states two causes of action. In the first cause of action appellant alleges that one Charles M. Gates was indebted to appellant in the sum of $315; that said Gates, in payment of said indebtedness, gave to appellant an order on the respondent for said sum; that thereafter respondent accepted said order, and paid appellant thereon the sum of forty-five dollars, leaving a balance due of $270. It is alleged in the second cause of action that one Frank Leighton, on or about the second day of July, 1891, made and delivered to appellant an order in writing on the respondent, directing him to pay the appellant the sum of twenty-five dollars, and that on the third day of July respondent accepted said order, and thereafter paid twenty dollars thereon; that there is still due a balance of five dollars. The respondent by answer denied many of the allegations of the complaint, and set up a counterclaim for lumber sold and delivered to the appellant, of the value of forty dollars, and prays for judgment therefor, with interest and costs. The cause was tried by the court with a jury, and

judgment on the verdict was rendered against the appellant for the sum of thirty-six dollars. A motion for a new trial was interposed, and overruled by the court. This appeal is from the order overruling the motion for a new trial, and from the judgment rendered.

The appellant assigns four errors. The first is that the court erred in taking the first cause of action set forth in the complaint from the consideration of the jury. The record shows that one Gates was indebted to the appellant in the sum of $315 for a team of horses, some straw, barley, a cant hook and a swamp hook, and that appellant made a demand upon Gates for the payment of said sum on or about the 13th of July, 1891. Gates replied that he could not pay said sum, but that respondent, Miller, was owing him, and that he would give appellant an order on Miller for the said sum, whereupon the appellant replied: "All right. If Miller will accept the order, I will release you. If he won't accept the order, I am going to bring this back to you." It appears from the record that the appellant went to see Miller immediately after receiving said order from Gates, and presented the order to Miller for payment. Miller replied that he could not pay the order at that time. The appellant informed Miller that his creditors were crowding him, and that he would have to have the money, and informed Miller that, unless he (Miller) paid said order, he would have to attach Gates' stock, or get it out of him in some way. Miller replied: "You cannot get anything out of Gates, for all the money he gets has got to come through me." Casey replied: "Then you pay the order." Whereupon Miller said: "I will tell you what I will do. I will pay you $100— forty-five dollars on the Gates order and fifty-five on the Mc-Leod order." Casey replied that that was better than nothing, and inquired when he could pay the balance. Miller replied: "In about sixty days." Casey replied: "All right. I will take that, and release Gates." It further appears that in about ten days Casey presented the order to Miller, and he paid forty-five dollars thereon, and also paid the McLeod order of fifty-five dollars, making the $100 which he had agreed to pay. The order is as follows:     "Fish Lake, July 17, 1891.

"Mr. Miller: Please pay to Mr. James Casey the sum of three hundred and fifteen ($315) dollars, and charge to my account, and oblige.     "[Signed]     CHARLES M. GATES."

At the time Miller paid the forty-five dollars on the said order he made the following indorsement upon the back of said order: "July 30, 1891. Paid on Gates order forty-five dollars." Gates further testifies that, about three weeks after Miller had paid the forty-five dollars on said order, he saw Gates, and told him that Miller had accepted the order, and had paid forty-five dollars on it, and promised to pay the balance in about sixty days. On cross-examination Casey testified that Gates became indebted to him for a span of horses in the sum of $175, for which sum Gates had executed two promissory notes to appellant—one in the sum of seventy-five dollars, and the other in the sum of $100; and that the balance of the $315 was due on book account, and that the only contract he made with Miller in regard to the payment of said order was that appellant should release Gates from his liability to him, and Gates should release Miller from his liability to him, which was done, and Miller thereupon agreed to pay said order, and did pay forty-five dollars thereon. At the close of Casey's testimony the attorney for the respondent moved "that the claim of the plaintiff as to the amount of the $175 and two notes in question be stricken out of the complaint"; whereupon Casey was recalled for further examination, and testified as follows: "It was agreed all around that I should release Gates if Miller accepted the order, and that Gates should release Miller—that I should become Miller's creditor instead of Gates' creditor"; at the close of which testimony the court made the following ruling: "The first cause of action is hereby taken from the consideration of the jury—that the first cause of action set forth in the complaint is not to be considered by the jury." The motion of counsel for respondent was to strike out of the complaint the amount of $175, represented by the two notes referred to in appellant's testimony. The court in ruling on that motion not only struck out the $175 represented by the two notes, but the entire first cause of action, which claimed $270 as the amount due.

The record is silent as to the reason entertained by the court for withdrawing the first cause of action from the consideration of the jury, and we are unable to perceive any reason that would justify it, and know of no authority that would sustain said ruling. It is true, under the evidence, that the attorney for the respondent stated to the court that he did "not think there had been any novation of these notes on that contract," and we presume that the court concluded that novation was

not shown, and struck out the sum of $175 for that reason. The record is silent as to the reason entertained by the court for striking out the ninety-five dollars, making the balance claimed in the first cause of action. From the evidence, as it appears in the record, we think that novation is clearly established, and Casey, creditor of Gates, consented to accept Miller as his debtor, and canceled the debt so far as Gates was concerned. This was a novation. (Pollock on Contracts, 254.) Miller was owing Gates, Gates was owing Casey, and Miller simply agreed to pay the sum of $315, due from him to Gates, to Casey; or, in other words, he had agreed to accept Casey as his creditor instead of Gates. Miller did not, under said agreement, agree to pay the "debt of another," within the meaning of that term as used in the statute of frauds, but simply agreed to pay the debt owing by himself to appellant instead of to Gates. In *Barringer v. Warden,* 12 Cal. 311, the court, in referring to the statute of frauds, said "that the statute requires the promise to pay a debt of another to be in writing expressing the consideration; but this requirement has no reference to the promise by A to pay money that he owes by contract with B to C. This is his debt, and the mere direction in which he pays it does not alter the character of the contract from the original obligation. There is no difference between a debtor promising to pay his creditor directly so much money which he owes him, or promising his creditor to pay a third person the same sum, by an agreement between the three. The promisor, is paying his own debt, and his own obligation, and not assuming another's. This has been often decided, and is too obvious to require authority or further illustration to make the proposition evident." In the case at bar the record clearly shows that Miller agreed to pay to Casey the sum of $315, which sum he was owing to Gates. The record further shows that he not only promised to pay $315 to Casey, but that he actually did pay forty-five dollars on said claim. Counsel for respondent contends that the evidence fails to show any such agreement on the part of Miller; that when Casey presented the order the second time to Miller, and demanded payment of the balance due thereon, Miller asked him, "What order?" and claimed to know nothing about the order. Casey swears that Miller promised to pay the order, and did pay forty-five dollars thereon, and indorsed said sum on said order by his own hand. This evidence stands uncontradicted in the record, and clearly shows that Miller promised to pay said order. The court erred

in withdrawing the first cause of action from the consideration
of the jury.

In *McLaren v. Hutchinson*, 22 Cal. 187, 83 Am. Dec. 59,
the court says: "Here is a mutual agreement by the parties
interested, and it can make no difference that this mutual agree-
ment was not presented at the same moment of time, or that
all were not present at the time of its completion. Beach and
the defendant assented to it when the agreement was signed
and delivered, and the creditors afterward assented when in-
formed of the agreement by the defendant. This assent to the
agreement gave them a right of action against the defendant,
and the case is not within the statute of frauds." So, in the
case at bar, Gates assented to such arrangement, and gave Casey
an order on the respondent. Casey assented to the arrange-
ment by accepting the order; Miller assented by agreeing to
pay the order. The pretense that Miller never accepted said
order, because, when presented to him the second time, he stated
to the appellant that he knew nothing about the matter, is too
transparent to deserve any consideration whatever. Appellant
thereafter met Gates, and told him that he was going to bring
suit against Miller if he (Miller) did not pay the order, and
Gates thereupon replied that he would try to raise the money
and pay it himself—that he would take up the order himself.
This statement of Gates has no bearing on this matter what-
ever. The evidence clearly shows that the appellant looked to
Miller only for the payment of said order after his acceptance
thereof. That appellant neglected to deliver said two prom-
issory notes to Gates is no concern of the respondent. After
accepting the order on Miller, and Miller's acceptance of the
same, appellant swears positively that he released Gates, and
Gates was no doubt entitled to the delivery of said promissory
notes on demand; but the nondelivery of said notes to Gates
is no defense in this action. In the above view of the case it is
not necessary for us to pass upon the instructions to the jury,
for upon a retrial of the case, on the issues as made by the
pleadings, the court would certainly not instruct the jury as
it did at the former trial. The court should have granted ap-
pellant's motion for a new trial. The judgment of the court
below is reversed, and the cause remanded for a new trial in ac-
cordance with the views expressed in this opinion, with costs
of this appeal in favor of the appellant.

Huston, C. J., and Morgan, J., concur.